PEARCE *v.* ALWARD.

1. CONTRACTS—ANTICIPATORY BREACH—RESCISSION—SALES.

A contract for the furnishing of 2,500 grapevines to be set out on the farm of defendant, to be cultivated and tended by him for half the fruit, stipulating that the plaintiff should replace any vines which might die within two years, and that at any time within three years defendant might pur.chase plaintiff's interest in the grapevines at a specified price, does not warrant a demand for interest on the price named in the agreement, and such demand, accompanied by a refusal to replace, at the time stated in the agreement, the vines which might die, unless defendant should pay the interest, constituted a breach of the contract, and justified defendant in rescinding.

2. SAME—COVENANT—WARRANTY.

The agreement to replace dead vines was a dependent and concurrent agreement, not an independent condition going to but part of the consideration.

3. SAME—BREACH—SUBSEQUENT OFFER OF PERFORMANCE.

Offers of the plaintiff to perform the condition, after he had committed a breach thereof, were ineffectual to restore his rights under the contract.

4. SAME—RESCISSION—REPLACING PARTY IN STATU QUO.

That defendant could not place plaintiff *in statu quo* did not affect his remedy of rescission.

Error to Kent; McDonald, J.   Submitted October 13, 1910.   (Docket No. 53.)   Decided November 11, 1910.

Assumpsit in justice's court by Peter D. Pearce against Herbert Alward upon a special contract.   Defendant obtained a judgment of no cause of action, from which plaintiff appealed to the circuit court.   A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error.   Affirmed.

*Taggart & Taggart*, for appellant.

*Benn M. Corwin*, for appellee.

BLAIR, J. This action was commenced in justice's court for breach of the conditions of a contract under which defendant received certain grapevines. The contract, made September 5, 1904, provided, among other things, for delivery to defendant at Grand Rapids of 2,500 grapevines; that, in consideration thereof, defendant should receive and properly set them out upon his farm and give them such care and cultivation as was necessary to keep them in proper condition; that the fruit grown and produced therefrom was to belong to and be owned in undivided one-half equal parts to each party. It was further provided that plaintiff should replace any vines dying within two years from the date of the first delivery at, Grand Rapids, and that at any time within three years from the date of the first delivery defendant could buy the undivided one-half interest of plaintiff in the vines for $250, and at any time thereafter by paying five cents per vine additional and 6 per cent. interest from the date of delivery. Defendant received and receipted for the vines in good condition at Grand Rapids October 27, 1904. He heeled them in for the winter, set them out the following spring, and took care of them under the contract, and fully performed the contract on his part until March 4, 1907, on which date he received a circular letter from plaintiff. Prior to the receipt of the letter of March 4, 1907, defendant had received several letters demanding interest at 6 per cent. on $250 from the date of the contract. In July, 1906, he received the following letter:

" We have written you several times regarding the interest on your grapevine contract, but as yet have not been favored with the amount. You, as a business man, must realize that the interest is a part of the consideration, and if you fail to take care of your part of the agreement, as regards paying the interest, you have broken your part of the contract and the whole amount becomes due."

The letter of March 4, 1907, was as follows:

"Part of the consideration of our contract with you was that the interest should be paid the first of each October.

Last October we notified you of the amount of the interest due, but as yet we have not been favored with a remittance.   You undoubtedly will want what trees are necessary to replace the dead ones next spring which we expect and intend to send you, but not unless we receive the amount of the interest due $15.00.

"Trusting that you will attend to this at once, we are," etc.

Upon receipt of the letter of March 4, 1907, defendant "considered that the contract was dead," and abandoned further performance of it.

In this suit plaintiff claims his share of the value of the crop of 1908, less cost of picking, and damage to his share of 2,000 vines for failure to properly care for them under the contract; no claim being based on the 500 vines which died.   Defendant filed plea of general issue and gave notice of recoupment for value of use of land, care of vines, etc.   The circuit judge charged the jury that by demanding interest in the letter of March 4, 1907, as a condition of replacing trees, the plaintiff imposed a burden not contemplated by the contract upon the defendant, and the defendant would have a right to consider the contract as rescinded, and, "the failure of plaintiff to carry out his part of the contract being undisputed, there is no question for you to pass upon," directing a verdict for the defendant.

The questions involved, as stated by counsel for plaintiff, are as follows:

"(1) Whether, in view of plaintiff's repeated offers to replace any dead trees and defendant's failure to ever count (until immediately prior to the suit) the vines that had died, or to make demand upon plaintiff to replace or accept replacement when offered, plaintiff had defaulted in a condition of the contract.

"(2) Effect of breach of a subsequent independent condition or agreement to be performed in the future and going to but part of the consideration.   Whether it deprives plaintiff of all remedy or goes only to reduce damages.

"(3) Defendant's right to rescind without putting plaintiff *in statu quo* and without notification.

"(4) Admissibility of evidence of the wholesale price of the vines for cash when the price was specifically fixed by contract entered into and not for cash and with special warranty."

1. If the letter of March 4, 1907, authorized the defendant to treat the contract as rescinded by the plaintiff, any offer to replace the vines made afterwards would be ineffective. Both parties treated the contract as requiring delivery in the spring of 1907, the time for planting the vines; at least, plaintiff recognized the right of defendant to demand them at that time and even long afterward. While the right to demand the vines was still open, plaintiff wrote the letter of March 4th, which obviated the necessity for any further demand under defendant's construction of its effect. We think there was a clear breach of the contract on plaintiff's part.

2. This is the important question in the case. Plaintiff contends that the agreement to replace constituted an independent agreement analogous to a warranty, going to only part of the consideration, which did not authorize rescission, but only the recoupment of damages. We are unable to take this view of the agreement. The number of vines was an essential element or feature of the contract, affecting the amount of land to be prepared for them, the amount of labor, and the profits to be derived. The parties contemplated working a vineyard containing 2,500 vines, not one containing 2,000 vines, or 1,500 or 1,000 vines, and, if plaintiff had tendered 2,000 vines at the outset, defendant would have been entitled to refuse to receive them. Defendant was bound to plant, cultivate, and care for the vines, and manifestly he could not do this until the vines were furnished, so that the furnishing of the vines at the beginning and the keeping of the delivery good by replacing the dead vines after the expiration of two years must precede the performance of the agreement on the defendant's part. It was admitted by plaintiff that defendant had performed the contract on his part in every particular up to the time of receiving the letter of March

4, 1907, and based his refusal to proceed further with it upon plaintiff's unlawful demand of interest in that letter. We are of the opinion that the agreement to replace was a dependent and concurrent agreement, and that the unjustifiable refusal of the plaintiff to perform his part of the agreement, and which, indeed, was substantially the only agreement on his part, authorized the defendant to treat the contract as rescinded by the plaintiff.

3. Plaintiff had a duplicate copy of the contract. He had put it on record. The plaintiff's claim of interest was wholly unsupported by the agreement, as well as his claim that defendant had bought the vines outright. Defendant had a right to believe that plaintiff fully understood his contract, and it is difficult to understand how he could have misunderstood it. The defendant was without fault, and the plaintiff was wholly at fault in breaking the contract. He first rescinded the contract, knowing that defendant could not place him *in statu quo*, and must suffer the consequences of his unjustifiable act.

The trial judge did not err in instructing a verdict for defendant, and the judgment is affirmed.

BIRD, C. J., and OSTRANDER, BROOKE, and STONE, JJ., concurred.